## Case No. 8,224.

### LEITCH et al. v. UNION R. TRANSP. CO.

### [7 Chi. Leg. News, 291.]

District Court, N. D. Illinois. March 29, 1875.

COMMON CARRIER—LIABILITY OF—HOW LIMITED—BILL OF LADING—WHEN LIMITATION BINDING—EFFECT OF TENDER.

1. The common-law rule that in the absence of express contract a common carrier is liable for all loss or damage sustained by property in his hands as carrier, unless caused by the act of God or the public enemy, affirmed.

2. The carrier may limit his responsibility by special contract with the shipper, in which case the contract, and not the rule of law in the absence of a contract, becomes the measure of the carrier's responsibility.

3. The question as to whether the carrier, in the bill of lading given to the shipper, has inserted a clause limiting his liability to a specified valuation of the goods shipped, is a question of fact for the jury; but the legal effect or construction to be given to such contract is a question of law for the court.

4. Where the carrier has plainly embodied into the contract a clause limiting his liability to a specified amount, as by writing it distinctly in the printed blank used as a bill of lading, with no attempt at concealment, so that it can be read at once by any one reading the contract, the shipper is bound by such limitation, where he accepted the contract or bill of lading without objection or dissent, even though he neglected to read it and was, in fact, ignorant of its particular provisions. Such a case is distinguishable upon principle from those where the carrier has attempted

to limit his liability by an obscure notice, in fine print, or otherwise concealed, so as to escape the attention of the shipper.

5. In the absence of any limitation in the contract, restricting the carrier's liability to a specific valuation of the goods shipped, the jury are authorized, in case of loss, to find the carrier liable for the full value of the goods, as shown by the proof.

6. A tender of a less amount than that due is of no effect. A tender of a sufficient amount, if made after suit brought, only has the effect of stopping costs against the defendant making the tender from the time it is actually made.

At law.

Ward, Stanford & Riddle, for plaintiffs.

F. H. Winston, George Willard, and R. Biddle Roberts, for defendant.

BLODGETT, District Judge (charging jury). This is an action to recover the value of fifty-one barrels of highwines, burned while in the hands of the defendant as a common carrier between this city and the city of New York. The admitted facts seem to be these: That on the 10th of March, 1871, the plaintiffs, who were distillers in this city, shipped by the defendant, who was a common carrier between this city and New York City, one hundred barrels of highwines consigned to New York City. They were loaded into cars; fifty barrels in each car, and when at a short distance from here, on the night of the shipment some part of the train containing said cars took fire and one of the cars containing plaintiffs' wines was wholly destroyed with its contents and one barrel in the other car, so that the plaintiffs lost fifty-one barrels, making an aggregate of 3,294 $5/100$ gallons, which were worth in this market at that time, eighty-six cents per gallon, as is shown by the plaintiffs' proof, which is not contradicted. No special or gross negligence is shown or insisted upon, but the plaintiffs claim that the defendant is liable, as a common carrier, for this loss, and bring this suit to recover the value of the property so burned and destroyed.

The defendant insists by way of defense, that it assumed the transportation of said wines under a special contract, limiting its liability to twenty dollars per barrel in case of loss; and it is admitted that very soon after the loss, acting upon information that the contents of only one car had been burned, the defendant tendered to the plaintiffs one thousand dollars, which the plaintiffs refused to receive, and a few months since, the defendant has paid into this court one thousand and twenty dollars, being, as is claimed by the defendant, the value by express contract in case of loss of the fifty-one barrels of wines in controversy.

Where there is no express contract between a common carrier and shipper, the law imposes upon the carrier a very severe and strict responsibility, making the carrier liable for all loss or damage that property shall sustain while in the carrier's hands as a carrier, except such loss or damage as shall occur by the act of God or the public enemy. It is, however, competent for a carrier to limit his responsibility by special contract with the shipper, and when he does so, the contract, and not the rule of law in the absence of a contract, is the measure of responsibility; that is, you must refer to the contract made between the parties to ascertain the carrier's responsibility, and not to the law.

The defendant claims that the contract between itself and the plaintiffs was by a special bill of lading, by the express terms of which it was agreed that the value of said wines was 20 dollars per barrel; and the important inquiry is: first, whether such an express contract was made; second, whether, if made, it is binding on the plaintiffs, and fixes the measure of the defendant's responsibility.

It is admitted that the wines in question were loaded at the stock yards, and what is called a dray ticket was given to the plaintiffs by the railroad agent who received and loaded the goods. This dray ticket was a simple memorandum showing the amount of property shipped, and the names of the shippers and consignees. It may or it may not have had upon it words indicating a limitation of liability to 20 dollars per barrel. The proof is conflicting on that point. But that, I think, cuts no figure in the case, as it is admitted that by the course of business this ticket was to be presented at the proper city office of the defendant, where a bill of lading, which was the contract between the parties, was to be made out; and on the morning after this shipment was made, one of the plaintiffs presented this ticket at the defendant's office, and a bill of lading was made out and given to one of the plaintiffs who took it away from the office without objection to its contents. So far the parties agree as to the main facts in regard to the shipment, the ticket and the bill of lading. The bill of lading itself has unfortunately been destroyed, and we are compelled to resort to parol evidence to ascertain its contents. The witnesses on the part of the defendant, two of them at least, swear positively that this bill of lading contained a clause fixing the value of the wines shipped at 20 dollars per barrel. This is positive and unequivocal testimony. While the plaintiff, Col. Townsend, who procured the bill of lading, says that he cannot state from his recollection whether the bill of lading contained the clause in question or not, but says that he did not notice it, that his attention was not called to it, and he did not know that the defendant had in any manner limited its liability. The defendant's witnesses state that the bill of lading was substantially like the one offered in evidence in all its terms, and that the clause limiting the liability was written in this instrument as it is in the one before you, instead of being printed in it.

The defendant has also introduced evidence

tending to show that there had been a usage for many years prior to this shipment by all railroad and transportation companies running east from Chicago, to ship highwines as fourth-class freight, with this limitation of liability in the contract, and that this usage was and had been for many years known to and acted upon by all shippers of highwines from this city east, and that one of the plaintiffs had been for several years more or less connected with the manufacture and shipment of highwines here, and was familiar, to some extent, with the rates, if not with the forms of doing business. The testimony also tends to show that when highwines were shipped without this limitation of liability, much higher rates were exacted, and that highwines could not at the time in question be profitably shipped to the Eastern market, except at the low fourth-class rate. The plaintiff, Colonel Townsend, also admits that at the time of this shipment the freight was about fifty cents per hundred pounds on his highwines, which was the fourth class rate. This testimony was allowed to go before you, because it tended to show the general course and manner of doing this kind of business, and thus in the absence of the contract itself tended to show what the bill of lading or contract probably contained, it being but fair to assume that the plaintiffs transacted their business with the defendant in substantially the same manner and on the same terms as others engaged in the same class of business; but this is only circumstantial testimony, and is only to be considered by you as such.

The plaintiffs state that they had no knowledge of the different classification of freight, and did not know whether their wines went as first, second, third or fourth class freight, but this is not the material point in the case, the important question being, did they ship on the same terms that others did, and did their bill of lading contain this clause limiting the defendant's liability. Whether this bill of lading or contract contained this clause limiting the value to $20 per barrel, is a question of fact, to be determined by you from the proof. If you find that the contract did contain this clause, or in other words, if you are satisfied from the evidence by a fair preponderance that the bill introduced in evidence is a substantial copy of the one given by the defendant to the plaintiff for the wines in controversy, then the legal effect or construction to be given to the contract thus presented, is a question of law for the court. It is true the plaintiff Townsend says that he did not read the bill of lading, and his attention was not called to its terms, and it is urged by his counsel that he is not bound by this contract unless he assented to it, but I think the law is—and I so charge you—that if you find from the evidence that the bill of lading was, as is contended for by the defendant, and that one of the plaintiffs, Colonel

Townsend, accepted it without objection or dissent, then they are bound by its terms, although he did not read it, and was, in fact, ignorant of the particular provisions of the contract.

If the contract was as is testified by the defendant's witnesses, then the clause limiting the liability was not concealed or covered up by any ingenious arrangement calculated to prevent observation or notice. It was a part of the written portion of the contract, and as such would be much more liable to be noticed by a person taking it than if it had been among the printed matter of the bill. There is a class of cases where carriers have attempted to limit their liability by notice posted in their places of business or elsewhere, or even printed on the back of a ticket or bill of lading, in which the courts have held that it must be made to appear that the limitation was brought in some form to the attention of the shipper, in such manner as will justify an inference that the shipper has expressly or impliedly assented thereto before they will hold him bound thereby. So, too, courts have been very strict in regard to conditions or limitations printed in fine print or in an obscure place on a contract so as not to readily attract attention, considering such devices as practically fraudulent in their tendency; but I think the law is well settled that where the carrier has embodied his limitation plainly into the face of his contract so that it can be read and understood at once, if the shipper will only take the trouble to read it, the contract as a whole is binding according to its terms, and it will not do to let one of the parties have the benefit of another rule of liability because he neglected to read his contract. To do so would subject the carrier, by no fault of his own, to a different contract from the one which he, in fact, understood himself as making. Of course fraud vitiates all contracts, but fraud is not to be presumed, and there is no pretext that any fraud was resorted to or used in this case.

If, then, as I said before, you find from all the evidence in the case that the bill of lading given by the defendant to the plaintiffs for the highwines in question, was substantially like the one offered in evidence, you will find the defendant only liable for the wines lost at the rate of twenty dollars per barrel; but if you find there was no such limitation of value in the bill of lading or contract, then the defendant is liable for the full value of the wines as shown by the proof. The tender in this case was only made in the first instance for the value of the fifty barrels, then supposed to be lost. After that time defendant paid into court the price of fifty-one barrels, and the only effect of this tender is to stop costs from the time that it was actually made; that is, if the defendant tendered to the plaintiffs all which it was liable for, it is not liable for

costs made after that time, and if the plaintiffs, instead of accepting the payment thus offered, saw fit to continue the prosecution of the suit, they must do so at their own cost, if money enough was tendered to them. Of course you will understand that the first tender of $1,000, not being for a sufficient amount, cuts no figure in the case, and the second tender only affects the question of costs. You will not need to refer to the tender in your verdict, because the amount of your verdict will leave the question of costs to be determined by the court. The form of your verdict will be guilty or not guilty. If guilty, you will then assess the damages at the value of the wines, as shown by the proof, if the special contract is not made out, and if the special contract is made out you will then assess the damages at the value of the wines, at $20 per barrel. For convenience I will repeat the figures. The total loss was 3,294 $5/100$ gallons, at 86 cents per gallon. If I have figured correctly, it will amount to $2,833.27; while, if the special contract is made out. it is conceded the value of the wines will be $1,020.